Thank you, Your Honor. My name is Yolanda Huang, and I represent the 104 objectors who have filed this appeal, and I'd like to reserve four minutes for rebuttal. All right, watch the clock. The objectors are all class members who were present in custody at the time that the court approved the settlement, and the inmate objector's request that this court vacate the settlement's approval because of fundamental necessary elements for a class action settlement, namely that the settlement is fair and equitable and that the named plaintiffs truly represent the entire class, these are missing. The trial court failed to conduct the review as required by Rule 23e. Instead, the court applied the Hanlon standards and never evaluated whether the class representatives adequately represented the class, which clearly they do not. Fairness and adequacy of representation and the concurrence of the objective and the point of view of the named plaintiffs with those of the absent class members is the foundational cornerstone of a class action, and that was articulated by Hansberry v. Lee. There has to be a demonstration that those class representatives have a common interest with the class, and in this case, the court did not make that finding at the time of review of the proposed class settlement, and the class named plaintiffs do not have a common interest with the vast majority of the class. The named plaintiffs were all housed in segregated housing, and the stated purpose of this litigation was to address people who have serious functional impairments and lived in segregated housing, not people who lived in general housing. Seven of the eight named plaintiffs had a verified mental health disability, and the remaining eighth plaintiff, while he did not have a verified mental health disability, had serious mental health diagnoses, including anxiety, depression, and agitation. This is in contrast to the objectors and to the remainder of the class members who may have mental health issues or may benefit from mental health support while in custody, but they do not have a mental health diagnosis, they do not have a mental health disability, and they are not living in segregated housing. Because the trial court failed to apply the correct legal standard, the application of an incorrect legal standard alone, and I quote, this type of error is not subject to review for harmlessness and is subject to reversal. And that's in re apple. The very first examination required by Rule 23E states that the trial court is to evaluate whether the named plaintiffs and trial counsel adequately represented the class, and this issue was not examined and not discussed in his order approving the settlement. The second examination directed by Rule 23E is whether the relief was adequate, and that was only very cursefully examined. The court identified the relief that he claimed the main class would receive, but never examined the adequacy of that relief. He did not discuss whether the relief was substantive. He did not examine the amount of the relief that the absent class members, the main class and the absent class members, the Futures, would receive compared to the relief that the named plaintiffs and the disability subclass would receive. Merely because there is some modicum of relief to the main class does not make the relief substantive nor equitable, and the trial court failed to conduct an evaluation of what the actual benefits were to the named plaintiffs in comparison to the class members, the absent class members. Now, Rule 23E also requires an examination of the adequacy in terms of examining the adequacy of the relief. There is a specific requirement that there is an examination of the effectiveness of the proposed distribution of the relief to class members. Is there a mechanism that they're going to receive this relief? Are they going to be able to benefit of it? If there is benefits being stated in the settlement, but there is no actual delivery of the benefits, then it's an illusory settlement. And while the class the trial court cited a number of purported benefits, he, in fact, ignored the numerous criticisms by objectors who stated that these purported benefits would not benefit them. The new classification system, the reconfiguration of outdoor recreation, minimum out-of-cell times, electronic information tracking, did not provide genuine relief for the main class members.  Good relief or not, but I guess I don't understand what the delivery argument would be. I mean, if the settlement is saying we're going to change policy in terms of use of force in these circumstances, if we're going to change policy with regard to out-of-cell time, what's the delivery problem as opposed to maybe you don't think that those were sufficient changes? Well, in terms of the out-of-cell time, the specific objection stated that the amount of less than what they were receiving before the agreement. So the delivery wasn't there. There was going to be increased out-of-cell time for people in segregated housing, for people who were in the subclass, but not for the main body of people. And second of all, simply having a tracking system for grievances doesn't deliver benefits. So you have a tracking system. You can tell where their grievance was filed. It doesn't say that the grievance has to be evaluated under some kind of objective standard. It doesn't say that there has to be some kind of a remedy for grievances. It just simply says we're going to track them. That in and of itself is not an increased benefit, and it doesn't warrant requiring the entire class, the main body, to give up basic constitutional rights. I've got four minutes left, and I'd like to reserve that time. Thank you. Thank you. Good morning, Your Honors, and may it please the Court, I'm Eric Sapp. I represent American Friends Service Committee. Sir, could you pull the mic up? You're so tall. Great. Is that better? My name is Eric Sapp. I represent American Friends Service Committee, Critical Resistance Oakland, Legal Services for Prisoners with Children, and National Alliance on Mental Illness, Alameda County Chapter, all of which are nonprofit organizations and objector appellants in this case. I would like to reserve three minutes for rebuttal, please. There are two phases in the modern history of collusive settlements. The phase prior to 2018, revisions of the Civil Procedure Code, and that subsequent to that revision. Before that revision to the code, Rule 23E spoke very generally about fairness, adequacy, and reasonableness, and as a consequence, the courts developed extensive doctrinal analyses and sets of factors, which varied somewhat from circuit to circuit, but by and large, in the Ninth Circuit, there was a consistent set of factors that originated in Officers for Justice in 1982 and continued through Hanlon and Churchill. These factors included also an analysis of, in addition to those factors, there was also an analysis for subtle signs of collusion, as it was described in the In Re Bluetooth case in 2011, which acknowledged that collusive agreements between class counsel and defendants may not be expressly obvious, but may have implicit collusion, which could be detected by looking at such signs as clear sailing agreements. In the present case, it should be noted that in the preliminary approval order, prior to the fee motion, the court below instructed that the plaintiffs submit an unopposed motion for attorney's fees. That phrase, unopposed motion, occurs twice in the preliminary approval hearing, describing a future fee motion, and it appeared that way because what the court did was simply rubber stamp the proposed order for the preliminary approval that was submitted to it. After the 2018, well, in the 2018 Federal Code revisions, the principle of noncollusion was reinforced by the factors that were mandated to be considered by courts in approving any class action settlement agreement. Under the new 23E2 factors, at least three of the enumerated factors there, which the Rules Committee described as among the core concerns that a court always must consider, whereas the prior doctrinally created set of factors were not necessarily at the core, although they could continue to be guidance for the courts. Among those factors include A, which is actual adequacy of representation by counsel and the plaintiffs, B, which has to do with arm's length negotiation, and subfactor C3, which expressly mandated consideration of attorney's fees in relation to the adequacy of relief. The Briseno decision by this court a few years later made clear, as did rows 1 through 2 versus SFBSC, that the mandatory Rule 23E2 factors had to be considered and that courts could not simply rely on the prior Hanlon or Churchill factors. That was also decided by this court more recently in Kim versus Allison that reliance on the Churchill factors would be insufficient to support a settlement. Counsel, we've never said that district courts have to sort of tick off the list and mention each factor. We've said that they have to consider the Bluetooth factors now. So there is a statement in the district court's decision about a finding that this settlement was not a product of collusion, which signals that the district court was thinking about this issue, that all these factors are supposed to get at. So why wasn't that enough? Well, I would actually disagree that the court is not required to go through them expressly. Well, what's your case for that? I mean, I agree that we've not said you have to mechanically go down, and we have a finding here that there's no collusion. So why isn't that sufficient? Well, the finding of collusion actually dated back to the preliminary approval order. But it was in the final one, too. Why does that matter? Well, that seems to indicate that the court was just mechanically going through the motion of approving what the parties had presented before him rather than doing an independent analysis. Were there 14 settlement conferences, right? I'm sorry, Your Honor, I didn't hear what you said. Were there 14 settlement conferences? That's true, Your Honor. And it was before the same magistrate judge, correct? There was also a second magistrate judge who participated in some of those negotiations, I understand. But the Olien-On-Bach decision of this circuit requires a rigorous analysis for E23. Now, that was in the context of a B3 action. What's your best evidence of collusion? What you're saying is there's a rubber stamping. Maybe, maybe not. You say that the fee motion was unopposed. What else do you have? Well, our argument isn't that there is collusion, but that the court abused its discretion by not scrutinizing the settlement for collusion. We're arguing that there was essentially a procedural flaw in the approval below rather than a substantive collusion. Then what do you make of the district court's conclusion that there was no collusion? I think it's a conclusion. Back, the district court would say the same thing. Well, we don't know what the district court, or I would suggest we don't know what the district court will do after a rigorous analysis because it hasn't conducted that rigorous analysis. And if they do, they may reach a conclusion that it's collusive or they may not. But under the mandatory rules, they are required to examine the attorney's fees in light of the adequacy of relief. That's the reason for my questioning, is if there were some indicia of collusion here beyond what you've said, that would be one thing. But if the record itself is pretty bare of any indication of collusion. Well, there is a clear sailing agreement, which court precedents have held to be a sign of collusion. And in this case, there was an agreement not to contest funds up to a certain limit. And the relation between fees and relief to the class was not considered at all by the court below. And, therefore, we think that was an abuse of discretion. I'd like to reserve the remainder of my time for rebuttal. I have one more question for you before you sit down. We have a standing issue as regards to your clients. So what is your best argument that the Hillel standard is met in terms of exceptional circumstances to grant non-parties standing? So under the Hillel decision, and as clarified by the Volkoff v. Janssen pharmaceutical decision, meaningful participation in the proceedings below can suffice to confer standing. In this case, the nonprofit organizations submitted written objections and participated in oral fairness hearing. They were even cited by the magistrate judge in his final approval order, and, therefore – But I thought Hillel was speaking in terms of, like, somebody who's been sort of dragged into the proceedings against their will and then maybe somebody who the final decision, the judgment, applies to them even though they're not a party. And it seems like neither of those things are at issue here. Well, the equities regarding hailing, I think, is a sufficient reason to – hailing into court is a sufficient reason for finding the equities to favor standing. But I don't think it's a necessary condition. But even if it were considered a necessary condition, I believe the references, negative references to the objectors in the final approval order is tantamount to hailing. They were expressly acknowledged. Their participation was acknowledged in their approval order, and their objections were overruled, which is, I would submit, tantamount to hailing, and, therefore, the equities support allowing an appeal from that approval order. Okay. Thank you. All right, so Mr. Hoffman. Good morning, Your Honors. May it please the Court, Adam Hoffman, today on behalf of the County of Alameda, its sheriff, and the director of its mental health care services agency. With the Court's indulgence, I plan to address the issues of standing that have been raised in the party's briefing, as well as Magistrate Judge Cousin's authority to review and approve the party's settlement here. And then Class Counsel Ms. Hsu will take up the substantive merits of that settlement and the settlement approval. Because it's a threshold issue as raised by Judge Forrest, I'd like first to address the question of appellate standing in particular as it relates to the organizational appellants. As Judge Forrest was just alluding to, only parties generally may participate in an appeal. The organizational appellants are unquestionably not named parties. Unnamed class members can participate in an appeal, but they also are not and cannot be unnamed class members. And as a result, under this Court's precedent, they must demonstrate exceptional circumstances to justify their participation in this case. As we've just been discussing, the organizational appellants also acknowledge exceptional circumstances has two factors. One, meaningful participation in the district court proceedings. And second, that the equities favor their participation in the appeal. So can you address that first one? I guess I'm not entirely clear to the extent that these non-party organizations participated below. Your friend across the aisle suggests that it was pretty extensive. Do you agree? I do not, Your Honor. A couple of different items in that regard. The first one, a kind of legal principle, which is generally speaking, this Court has recognized that intervention is the basic, or at least in an effort to intervene in the district court proceeding, is the essential concept of meaningful participation below. This Court has never gone so far as to make that expressly a minimum requirement, but it has recognized the U.S. Supreme Court's statement in the Marino case that intervention is the, quote, best practice, and it has refused to recognize standing for non-party appellants who did not at least seek to intervene prior to the appeal. Here, of course, the organizational appellants could have sought to intervene. They chose not to, and so under Marino and under this Court's precedent, we would submit that they have not meaningfully participated. Now, of course, Mr. Sapp argues that the objections they filed should be sufficient to be considered meaningful participation in the district court, but there's a second problem there. They lacked standing to make those objections. We know that from the San Francisco NAACP case and the district court proceedings in the Volkswagen clean diesel case. Those cases held that only class members have standing to object to a proposed class settlement, except community organizations that have sought to intervene had that opportunity denied, but the district court refuses to allow them to intervene, and this was in the San Francisco NAACP case, but then recognized them for their expertise and granted them amicus curiae status during the district court proceedings. So did the district court here say, I'm not going to consider your objections because you don't have standing? I don't believe the district court addressed the issue of standing. So that was my understanding as well, and that the district court did consider the objections that were raised by these organizations, and so if that's the case, then why, as a matter of equity on appeal, shouldn't we let them be present because the district court let them be present? Well, two thoughts, Your Honor. The first one is as to this question of whether that constitutes meaningful participation, and again, I would just submit that having had the opportunity to intervene in all the prior case law really using intervention as a primary touchstone, their failure to do so here should be dispositive on the issue. But I think the district court having passively sort of acknowledged their submission is not the same thing as what happened in, again, for example, the San Francisco NAACP case where the court recognized the expertise of the community organizations. They had attempted to intervene. I just think this is a different situation. And without an express ruling by the district court saying, you know, these organizational parties have come in. They're not parties, but I'm taking account of their input because I find it valuable. I just don't think it rises to the level. Did the district court also accept separate comments from the community? There's reference to, you know, receiving a whole number of objections or comments to the settlement, some of them being from community members. Does that reference to community members refer to these organizations or were there other community members that were also heard from? I gather that there were several other community members. I believe there was a state senator who submitted comments. There were a few others. I mean, their standing isn't before the court because, of course, they are not before the court. We're concerned here with the organizational appellants standing on appeal. But we would submit that the district court's openness to receiving a wide variety of comments should not be sort of deemed as a method to construe their participation as meaningful under the exceptional circumstances test. And then I just want to touch separately because we've been talking about meaningful participation. The equities also have to favor them. Here, the case law is clear that that involves being hailed into court. Mr. Sapp says that that is sufficient but not necessary. I think that argument is inconsistent with this court's precedent, which consistently discusses this idea of being hailed into court against your will. And, in fact, in the Citibank and Washoe cases, this court found that the absence of that sort of hailing into court was a reason to find that they did not have appellate standing. I want to discuss briefly the Second Circuit cases that the organizational appellants have submitted that they construe as allowing appellate standing to parties who have an interest, who are impacted by a judgment. And we submit that the court should reject those arguments. Most importantly, as we've been discussing, this circuit has a settled standard for allowing non-parties to participate in an appeal. And a bare assertion that an entity is indirectly impacted by a judgment does not meet this circuit's standards. And in that regard, this court is joined by at least the Seventh Circuit, as the organizational appellants have acknowledged, and the First, Fourth, and Sixth Circuits. So we submit the court should not adopt the Second Circuit's more lenient approach here. But we would note that even if the court were to allow that, the organizational appellants' arguments fall short. They have only claimed, for the first time in their reply brief in this court, that they will somehow incur costs if the consent decree is upheld. That bare assertion falls far short of the kind of direct impact they were faced by the non-party appellants in the Second Circuit. Moving on from the issue of standing, unless the court has further questions on that issue, the next threshold issue, and it's an issue raised only by the organizational appellants, is Magistrate Judge Cousin's authority to approve the party's settlement. As discussed in the briefing, the court knows well, magistrate judges can exercise full judicial authority with the consent of the parties. Here, there's no dispute that the county defendants and the class representatives did consent to Judge Cousin's. The organizational appellants, however, argue that was insufficient, but their arguments have been squarely rejected by this court and by every other circuit court to consider the issue, as far as we can tell. Most importantly, this court's decision in Coby v. ARS National Services found that pre-certification consent by class representatives was sufficient, both under the Federal Magistrate Act and under Article III. As I mentioned, that holding is consistent with similar decisions in the Third, Fourth, Seventh, and Eleventh Circuits. In light of those cases, in the absence of any contrary authority, there's no basis for the organizational appellants' arguments challenging Magistrate Judge Cousin's authority in this case. Finally, the organizational appellants have called into question the sufficiency of the district court's analysis regarding the named parties' standing. The class representatives demonstrated their standing, and that of all class and subclass members, in their pleading and when seeking class certification. And the district court ultimately found that the class and the subclass, as defined, faced a risk of harm from unlawful policies and practices at Santa Rita Jail that is sufficient to establish standing for equitable relief under this court's precedent. The organizational appellants ignore that evidence, the district court's findings, and the relevant legal standards and focus on the hypothetical question of whether the district court must determine standing for all absent class members. Even assuming that is required, it was met here. The organizational appellants have not demonstrated a lack of standing. And unless the court has any questions, I will cede what little time I have left to Class Counsel Ms. Hsu. All right, thank you. Thank you, Your Honors. I'm sorry. Good morning, Your Honors, and may it please the Court. My name is Amy Hsu, counsel for the appellees, the plaintiff class. The court should affirm the district court's decision granting final approval of the consent decree. This is an appeal about a consent decree that provides meaningful injunctive relief and remedies inhumane and unconstitutional conditions at Santa Rita Jail. It's an agreement that was reached after more than four years of investigation and arms-length litigation. It requires the defendants to dramatically limit the use of isolation, increases out-of-cell time by more than four times, and makes mental health treatment much more available at the jail, among other improvements. So would you address the district court's failure to specifically address the Bluetooth factors? Yes. So the district court did consider the objector's arguments about conclusion and rejected that there was any sign of collusion. So the district court made numerous findings in the final approval order. It found that there was an arms-length negotiation, that there was a mediation, that the mediation over the period of, you know, many sessions was supervised by a magistrate judge who served as the settlement judge, that it required input from the Department of Justice, who was independently, you know, investigating the conditions at the jail, that there were hundreds of hours of work done by class counsel in communicating with the class, you know, resulting in a thorough investigation about the conditions there. 57,000 pages of documents in discovery, four expert reports from neutral experts. And then it also, in great detail, detailed the valuable injunctive relief provided by the consent decree, you know, and weighed the injunctive relief. And then on the other hand, it looked at a fully briefed motion for attorney's fees provided by class counsel in which class counsel substantiated the rates, the load star, the hours that they had spent on the case and what they had done in that time. So the district court considered all of that information, made findings that it was not collusive, and that another factor is that the attorney's fees was negotiated after the parties had reached agreement on the substantive aspects of the consent decree. So, you know, the court considered all of those facts in the record, and many of them were actually apparent in the district court's decision, finding that there was no collusion. So, counsel, I think it's pretty clear from the court's analysis that they were aware of the Hanlon factors, and those matters were considered. But as the earlier argument discussed, Rule 23 was amended after Hanlon, and it added some additional factors sort of related to the same thing. We just have this whole laundry list of factors that are supposed to get to the same idea. And then we issued the Bluetooth decision that sort of gives further analysis to a piece that Rule 23, the amended Rule 23, added. I've gone through the district court's decision over and over and over again, and I can't see any hint that the district court was aware of the Bluetooth factors, applied them, thought about them, knew that it was something that needed to be discussed. What, in the district court's opinion, lets me know that the district court knew that was part of the test it had to apply? The district court made findings at ER 4 and 5 that the consent decree was reached after intensive and prolonged arms-length negotiation by capable counsel, and that it was, and I'm skipping a little bit in the middle, was not the product of fraud, overreaching, or collusion among the parties. I think that's in the section of the district court's opinion under the heading related to the motion for fees. Is that right? No, Your Honor. It's actually under the section about how the settlement is fair, adequate, and reasonable. All right. Let me pull it up here so that I can. So the argument your opponents have is that the failure to discuss the Bluetooth factors specifically is fatal. Are you essentially arguing that if we can reasonably discern that the Bluetooth factors have been addressed, that it's a kind of harmless error? My argument is that the district court did consider these arguments about collusion and made all the required findings under Bluetooth and found that there was no collusion. It perhaps did not lay out the Bluetooth factors verbatim the way that the test is laid out in Bluetooth, but my position is because all those factual findings are in the record and was considered by the district court judge, that's essentially the same thing. I remember why the language that you quoted, why I have trouble with it. So you're right. It's on 4 to 5, the finding, this agreement was not a product of fraud, overreaching, or collusion among the parties. It turns out that that's almost a direct quote from Hanlon. So, again, that's referencing back to the Hanlon test and not to the developments since Hanlon was decided, including the amendments to Rule 23 and then Bluetooth. So I'm back to my question of, I mean, I get the whole argument of isn't there enough in there? I mean, again, we have this whole long list of factors. It's sort of going to this core idea. He's talking about the core idea, isn't that enough? But our case law says that if a district court applies the wrong legal standard, that's an abuse of discretion, full stop. And what I'm looking at in this decision is I can't tell from the district court's discussion that it knew it needed to think about Bluetooth. So I'm back to my, what tells me? I think that all of those factual findings that I pointed the court to earlier, all the findings about the extensive negotiations, the vast extent of the litigation before, those are all factors that the court considered in concluding that there was no collusion. And this court has not typically adopted a harmless error standard in terms of applying various standards, but for class action settlement approval. But there have been cases in which there have been so-called technical errors where courts have misapplied one factor. But because the record just lacks any evidence that this case was a product of collusion in any way, courts have corrected that. And rather than remanding and asking the district court to do the same analysis, an example of that would be the Campbell case in which the district court misapplied one of the Bluetooth factors. But there was a lack of evidence about collusion in the record, and it was not worthwhile for the appellate court to find that to be a legal error. So I don't have – refresh me. Was Bluetooth briefed before the district court? Or do you remember? I can look it up, but if you know offhand. I apologize. I don't know that, Your Honor. Ma'am, I may be curmudgeonly, but since we're into Bluetooth, when I was doing my preparation and I wanted to see what you had to say about Bluetooth, your table of authorities is off like four or five pages. So when I went to try to find them, it was very difficult to find them. And so something to you and all counsel is the final version should be paginated to your table of authorities and vice versa. Yes, I apologize, Your Honor. So I guess the real question is we can't tell by the opinion itself or the order itself whether the Bluetooth factors were analyzed. We can look at the substance and say it looks like it. Is that enough? Yes, Your Honor. I mean, we – at least the objectors have not raised any cases in which they have found that that's not sufficient. I mean, the cases that they raise in terms of, you know, application of a wrong legal standard discusses application of a substantively wrong legal standard. They raise examples like In Re Appel and Saseo, in which the district court applied a substantively incorrect presumption towards approval of a class action settlement, and that's just simply not what happened here, in which the district court made all of the required findings, concluded that there was no collusion, that there's actually no indicia in the record indicating that there is collusion. I think that those are two completely different situations, and what the district court did here certainly was not an abuse of discretion. If I may, I'd like to take a little bit of time just to talk about the substantial relief in the consent decree, because I think that's an important factor to think about that the district court considered. Prior to the consent decree, Santa Rita Jail was well known as a lockdown facility that offered extremely limited out-of-cell time to incarcerated people for various reasons, ranging from punishment for breaking rules or as a response to suicide or self-harm. These are issues that are addressed in the consent decree. The consent decree requires the jail to develop a system for deciding how people get put into isolation settings. One issue mentioned by the objectors is that the consent decree actually provides less out-of-cell time, but the district court made factual findings that the consent decree actually allows for more than four times as much out-of-cell time as before the consent decree was approved. So if I see that, my time has expired, so thank you to the court, and please affirm the decision. Your Honor, I'd like to address a question that you have raised with regard to the collusory effect and the implications of collusion that are in the settlement agreement. One, you have a huge benefit to the defendants, which is that they have effectively bought peace and protection from lawsuits from over 125,000 potential from 125,000 class members over the course of this consent decree. All the people who in the future will come into this jail will have their rights waived, and they will have issue preclusion and res judicata. That's a huge price. And they're not going to get anything substantive from this lawsuit. The four times benefit goes to the subclass, and it goes to those who are most functionally impaired. I agree with the court that says these conditions are unconstitutional and have to be remedied. But the question is, what is the price of that remedy? And so when you look at the actual order approving the final settlement, what you see is that there is extreme deference to class counsel because they're experienced and they negotiated this. There is the balancing of interests. And he very clearly says that because he considers the need so great that he's going to approve this because it does something rather than nothing. And that's a balancing of the interests, and that's not applying either Rule 23e or the Bluetooth standards. The second thing is we – there were comments raised in which the criticism was that the majority of incarcerated individuals, 96 percent, were not going to receive any actual benefit. Instead of investigating this claim and objection, instead of asking for more briefing, instead of doing a factual finding, what the court simply did was say, I don't understand this, it's not clear to me, I'm going to ignore it and move on. And I think those are specifically responsibilities that the court needs to undertake to protect the interests of absent class members. I think that what you see in Ray Apple is when you have approval of class settlement, it is strict scrutiny. It's a heightened responsibility. And what you don't see in the court's order is a heightened responsibility. He did not undertake the hard work of finding out what the facts are and of looking at the – It's hard to make that conclusion on this. I mean, he notes that the parties extensively evaluated the merits of the case, goes on to say, satisfied that the consent decree was reached after intensive and prolonged arms-length negotiations by capable counsel with input from the United States Department of Justice and under the supervision of Magistrate Judge Laurel Beeler, and was not the product of fraud, overreaching, or collusion. I mean, that's pretty specific. It's true. Yeah. On that basis. Yeah. But when he got the objections, you have an opposing party with a different point of view saying those aren't correct. And he did not investigate the basis of those allegations. He just smoothed it over and ignored it. And I don't think that that's the standard the 23E is asking, that if you are going to say we're deferring to the we disagree with that conclusion, then there has to be at least some effort to say what is the basis for that objection, and there was none. And I think that that's where it falls down when you're saying – when people are claiming that they're not receiving benefit and that a large, significant majority of the class members are not receiving benefit. I don't think he said deferring to DOJ. He noted that it was a positive presence. Well, there's no obligation to the DOJ. One factor which I think raises an issue of concern is that the entire agreement is subject to a confidentiality agreement. There is no independent evaluation, and there's no way for the class members to evaluate what the agreements are going forward for implementation because it's subject to a confidentiality agreement. And I think that in and of itself highlights a sense that there is some kind of conclusion. If there's going to be adversarial, then why is it confidential? Why is the implementation part confidential? Thank you very much. Thank you very much for your argument. On the question of magistrate jurisdiction – Can you lift your mic? Thanks. On the question of magistrate jurisdiction, the Coby decision rejected a categorical prohibition on consent in class context, but it left open that specific circumstances, which is called unusual circumstances, although I don't think the usualness or unusualness is the key point. The key point is that particular circumstances may be such that the alignment of interests that are normally associated with a class action do not obtain. In this case, the certification order, which is in Volume 17 of the excerpts of the record, Volume 17, ER 4238, the certification order finds that only in one single sentence kicks off numerosity, commonality, typicality, and adequacy. No analysis whatsoever. It just rubber-stamped the proposed order. In that circumstance, there's no reason to assume that the typicality and adequacy of representation that Coby premised its holding on would be present. In the current case, there are reasons to believe that there is a non-alignment between currently incarcerated and future incarcerated persons who are part of the class, as well as, as my colleague mentioned, the different situation between members of the class and subclass and absent class members. We respectfully request that this Court vacate the decision below and remand for further proceedings. Thank you, counsel, for your helpful arguments in this interesting and challenging case. The matter of Babu v. Aaron will be taken under advisement. And that completes our docket for today.
judges: Boggs, THOMAS, FORREST